IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRETT DEVINE
d/b/a DEVINE EXTERIOR                                                    PLAINTIFF

v.                              Case No. 4:24-cv-00089 KGB

JOHN PRESTON WILSON, SR.
and LIGHTS BY SPARKY, INC.                                              DEFENDANTS

<u>ORDER</u>

Before the Court are two pending motions to dismiss.  First, there is separate defendant John Preston Wilson, Sr.'s answer to the complaint that prays that the complaint be dismissed with prejudice (Dkt. No. 3, at 5).  This first motion to dismiss by Mr. Wilson is listed on the docket sheet for this case as Docket Number 5.  Plaintiff Brett Devine responded in opposition to the motion (Dkt. No. 6).  Also before the Court is defendant Lights by Sparky, Inc.'s ("Sparky") motion to dismiss plaintiff's complaint (Dkt. No. 8).  Mr. Devine responded in opposition to Sparky's motion (Dkt. No. 10).  For the following reasons, the Court denies Mr. Wilson's motion to dismiss and grants, in part, and denies, in part, Sparky's motion to dismiss (Dkt. Nos. 5; 8).

I.      Background

Mr. Devine filed this action on February 2, 2024, alleging five counts against Mr. Wilson and Sparky:  "Violation of Cyberpiracy Protections for Individuals" under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 8131 (Count I); "Violation of the Arkansas Deceptive Trade Practices Act" ("ADTPA"), Arkansas Code Annotated § 4-88-101 *et seq.* (Count II); "Outrage" (Count III); "Unjust Enrichment" (Count IV); and "Injunctive Relief" (Count V) (Dkt. No. 1, at 13–28).

To summarize the allegations, Mr. Devine states that he is a sole proprietor who provides landscaping services, including the installation and removal of Christmas lights during the holiday season (*Id.*, ¶ 1). Mr. Devine operates under the name of "B. Devine Exterior" ("Devine Exterior") and has been in this business in central Arkansas for over 13 years (*Id.*, ¶ *4*).[1] Mr. Devine alleges that in 2018 Mr. Wilson formed a competing company, Sparky, an Arkansas corporation, that also installs Christmas lights during the holiday season (*Id.*, ¶ 5). At times, Mr. Wilson uses Sparky as his alter ego (*Id.*, ¶ *2*). Mr. Devine also states that Mr. Wilson competed against him for several years prior to 2018 (*Id.*, ¶ 5).

Mr. Devine alleges that, over the course of several years, defendants have engaged in deceptive practices (*Id.*, ¶ 6). Mr. Devine alleges that defendants told clients that: (1) Mr. Devine did not know what he was doing; (2) Devine Exterior was not a real business; (3) Devine Exterior would mess up their home; (4) the lighting work on the houses of Devine Exterior's clients was "shotty"; and (5) Mr. Devine did not pay his taxes (*Id.*). Mr. Devine further alleges that his customers became aware of defendants' false statements and that at least one of them confronted defendants about the false statements (*Id.*). The false statements eventually led to Mr. Devine issuing a cease-and-desist letter to Mr. Wilson and Sparky in 2019 (*Id.*). An attorney for Mr. Wilson and Sparky verbally responded to the letter indicating that the misconduct would stop (*Id.*).

---

[1] The complaint refers variously to "Devine" and "Mr. Devine." The Court understands references to "Devine" in the complaint to refer to the Devine Exterior business. The Court understands references to "Mr. Devine" in the complaint to refer to the plaintiff in his individual capacity. In Mr. Devine's complaint, Mr. Devine refers variously to his business as "B. Devine Exterior" and "B. Devine Exteriors." For purposes of consistency, the Court uses "B. Devine Exterior."

Mr. Devine alleges that the misconduct did not stop (*Id.*, ¶ 7).  In 2021, Mr. Wilson posted on Facebook that his long-time competitor had retired and that customers should contact Sparky for that business (*Id.*).  During that same year, Mr. Wilson allegedly continued falsely to tell customers that Devine Exterior was not a real business and that Devine Exterior was "uninsured" (*Id.*).  Mr. Devine asserts that these allegedly false statements are inconsistent with the fact that Mr. Wilson once offered to sell his business to Mr. Devine (*Id.*).

Mr. Devine also alleges that there were several instances where Mr. Devine's customers had their Christmas lights cut while Sparky's employees were in the area, although he notes that this was never tied to Sparky (*Id.*).

In 2023, Mr. Devine explored ways to expand his business and his wife reached out to "Godaddy.com" to implement the Devine's website plan and expanded business model (*Id.*, ¶ 8).  Over the course of a few weeks, Mr. Devine's wife received responses from "Godaddy.com" informing her that the website domain names being attempted by Mr. Devine would violate the rights of others (*Id.*).  The domain names attempted were in Mr. Devine's personal name or variations thereof (*Id.*).  Mr. Devine's wife then reached out to "Godaddy.com" for an explanation (*Id.*).  To her surprise, she received a response from Mr. Wilson, who was contacted by "Godaddy.com" regarding the inquiry (*Id.*).

On January 5, 2024, Mr. Wilson emailed Mr. Devine's wife and stated, "I received an email from godaddy.com about possible infringements" (*Id.*, ¶ 10).  Mr. Wilson further stated, "I have gone down this road before.  I have several websites and names registered with the Secretary of State and have had them for several years now" (*Id.*).  Mr. Wilson also said, "I would be interested in selling them if you are interested." (*Id.*).  Mr. Devine's wife replied and asked for more

information to which Mr. Wilson wrote: "I've owned them for several years. I also own all these names with the Arkansas Secretary of State as fictious names. I'll sell them as well. I have invested a lot of time and money over the years to maintain these. I will sell all for $10,000" (*Id.*). Mr. Wilson then listed the following domain names to be sold: devineexteriors.com; bdevineexterior.com; bdevinelights.com; bdevinelighting.com; brettdevinelights.com; and brettdevinelighting.com (*Id.*).

Mr. Devine asserts that he never consented to Mr. Wilson or Sparky using his name for website domains (*Id.*, ¶ 11). Further, the Arkansas Secretary of State website allegedly lists "B. Devine Exteriors" as a fictitious name for Sparky (*Id.*).

Mr. Devine further alleges that defendants violated the ADTPA "by diverting business from Brett Devine through the use of the websites under Brett Devine's name wherein customers would click the 'Devine' website domains only to be redirected to Sparky's website" (*Id.*, ¶ 19). Mr. Devine asserts that he sustained actual damages in each instance where a customer attempted to access Devine Exterior's website but was instead diverted to Sparky's website, resulting in Mr. Wilson and Sparky acquiring business at the expense of Mr. Devine (*Id.*). Mr. Devine alleges he suffered a financial loss due to the deceptive diversion of his customers to Sparky's website and sustained mental anguish caused by the deception and loss of business (*Id.*). Mr. Devine contends that defendants' long history of making false statements to Devine Exteriors' customers in an attempt to divert business from Mr. Devine to defendants has resulted in harm to Mr. Devine's reputation and to lost revenue (*Id.*).

Mr. Devine avers that defendants' allegedly deceitful conduct was intended to harm Mr. Devine and steal his good-will, reputation, and revenue (*Id.*, ¶ 25). Defendants' actions have

allegedly caused Mr. Devine emotional distress (*Id.*).  Mr. Devine also alleges that defendants wrongfully received the value of Mr. Devine's name and business goodwill, as well as revenue that was improperly diverted from Mr. Devine to Mr. Wilson and Sparky (*Id.*, ¶ 27).

## II.    Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint.  *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party.  *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001).  However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement."  *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

### III.    Discussion

#### A.    Separate Defendant Wilson's Motion

Local Rule 7.2(e) of the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas* requires that motions to dismiss be set forth in a separate pleading accompanied by a separate brief.  Mr. Wilson failed to comply with Local Rule 7.2(e), instead moving to dismiss only in a paragraph in his answer.  The Court denies Mr. Wilson's motion on this basis.

Further, the Court notes that, in his motion to dismiss, Mr. Wilson argues that he should be dismissed as a defendant in his individual capacity because he is protected by Sparky's limited liability under Arkansas law (Dkt. Nos. 3, ¶ 19; 5).  However, the Court understands the complaint to allege that Sparky's corporate veil should be pierced as to Mr. Wilson on the basis that Sparky is an alter ego of Mr. Wilson (*See* Dkt. No. 1, ¶ 2).  The Court considers Mr. Devine's allegations of fraudulent conduct as sufficient to support a claim for corporate veil-piercing against Mr. Wilson at this stage of the litigation.  *See Wyatt v. Wyatt*, 545 S.W.3d 796, 801 (Ark. Ct. App. 2018) ("Our law . . . requires a finding that the corporate form has been abused to the injury of a third party."); *Fulmer v. Hurt*, 515 S.W.3d 129, 134 (Ark. Ct. App. 2017) ("[I]n order to pierce a corporate veil, a plaintiff must have evidence of fraud, illegal conduct, or abuse of an entity for the specific purpose of injuring a third party.").

For these reasons, the Court denies Mr. Wilson's motion to dismiss (Dkt. No. 5).

#### B.    Separate Defendant Sparky's Motion

Mr. Devine's complaint alleges four causes of action:  (1) violation of the ACPA's Individual Cyberpiracy Protections under 15 U.S.C. § 8131; (2) violation of ADTPA; (3) outrage;

and (4) unjust enrichment (Dkt. No. 1). Sparky moves to dismiss all of Mr. Devine's claims (Dkt. No. 8). First, Sparky asserts that no domain name owned by defendant is that of a living person or one that is "substantially or confusingly similar" (Dkt. No. 9, at 2). Sparky contends that because one domain, "BrettDevine.com," is not owned or registered by defendant, but instead by a Ph.D. economist, Mr. Devine's complaint fails to state a cause of action under 15 U.S.C. § 8131 (*Id.*). Second, Sparky argues that Mr. Devine fails to allege any facts to show that the defendant registered any of the domain names with the specific intent to profit from such name by selling the domain name for financial gain (*Id.*). Sparky asserts that the defendant paid for and maintained the domain names for many years (*Id.*). Sparky then states that plaintiff's complaint "completely exonerates" it because it details that neither Sparky nor Mr. Wilson sought out the plaintiff to profit from the domain names (*Id.*). Rather, Sparky argues that it only contacted Mr. Devine after being informed that someone was trying to infringe upon this intellectual property by the server host (*Id.*). Sparky argues that, without a cause of action under 15 U.S.C. § 8131, this Court lacks subject matter jurisdiction over the remaining state law claims (*Id.*). The Court examines each of these arguments in turn.

### 1.    ACPA Claim

Count I of the complaint asserts a claim under the ACPA, which enumerates certain "cyberpiracy protections for individuals" (Dkt. No. 1, ¶¶ 13–18). Specifically, this claim is brought under 15 U.S.C. § 8131, which provides in part:

> [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

> In any civil action brought under paragraph (1), a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff.  The court may also, in its discretion, award costs and attorneys fees to the prevailing party.

To prevail on this claim under § 8131, Mr. Devine must plead that Sparky:  (1) registered a domain name consisting of Mr. Devine's name; (2) that Mr. Devine did not consent to the registration; and (3) that Sparky had the specific intent to profit by selling the domain name for financial gain.  *Id.* § 8131

In this case, Mr. Devine claims that defendants registered several domain names that incorporate Mr. Devine's name without Mr. Devine's consent (*Id.*, ¶ 17).  Mr. Devine further claims that defendants attempted to extort him by asking for $10,000 in exchange for the domain names (*Id.*, ¶¶ 10, 17).  In the light of these allegations, Mr. Devine has plausibly alleged that defendants violated 15 U.S.C. § 8131.  The complaint sufficiently alleges that:  (1) defendants registered several names consisting of Mr. Devine's name or one similar thereto; (2) Mr. Devine did not consent to defendants registering these names; and (3) defendants purportedly had the specific intent to profit by offering to sell the domain names to Mr. Devine for $10,000.  Whether or not a single domain—"BrettDevine.com"—is owned by a Ph.D. economist rather than defendants is irrelevant to whether Mr. Devine's complaint sufficiently states a cause of action under the statute as to the other domain names.  Likewise, there is no requirement that defendants need have "sought out" Mr. Devine to have an intent to profit for purposes of § 8131.  Indeed, merely using the domain names as leverage in negotiations is sufficient.  *See Tollefson v. Pladson*, Case No. 3:11-cv-62, 2012 WL 3402107, at *3 (D.N.D. May 9, 2012), *R. & R. adopted*, Case No. 3:11-cv-62, 2012 WL 3396389 (D.N.D. Aug. 14, 2012).

For these reasons, the Court finds that Count I of the complaint sufficiently states a claim under 15 U.S.C. § 8131. As such, this Court may properly exercise supplemental jurisdiction over the remaining state law claims.

## 2.    ADTPA Claim

Count II of the complaint asserts a claim under ADTPA on the basis that defendants diverted business from Mr. Devine using the websites under Mr. Devine's name wherein customers would click the "Devine" website domains only to be redirected to Sparky's website (Dkt. No. 1). In addition, Mr. Devine claims that defendants has a long history of making false statements to Mr. Devine's customers to divert business from Mr. Devine and direct it to defendants (Dkt. No. 1).

To state a claim under ADTPA, a private plaintiff must plausibly allege: (1) a deceptive consumer-oriented act or practice which is misleading in a material respect; and (2) an injury resulting from such act. *Parnell v. FanDuel, Inc*., 591 S.W.3d 315, 318 (Ark. 2019). Arkansas Code Annotated § 4-88-107 states, in relevant part, that "disparaging the goods, services, or business of another by false or misleading representation of fact," constitutes a deceptive and unconscionable trade practice. Ark. Code Ann. § 4-88-107(a)(2).

In this case, Mr. Devine has plausibly alleged that defendants engaged in a deceptive consumer-oriented practice which is misleading in a material respect and that an injury resulted from such practice. Mr. Devine alleges that defendants diverted business from Mr. Devine by using the websites under Mr. Devine's name where customers would click the "Devine" website domain only to be redirected to Sparky's website. Mr. Devine claims that, as a result, he sustained actual damages in each instance where a customer attempted to access Mr. Devine's website but

was instead diverted to Sparky's website. Mr. Devine alleges that this resulted in defendants acquiring business at Mr. Devine's expense.

For these reasons, the Court finds that Count II of the complaint sufficiently states a claim for a violation of the ADTPA.

### 3.    Tort Of Outrage

Count III of the complaint alleges the tort of outrage on the basis that defendants' deceitful conduct was intended to harm Mr. Devine and steal his goodwill, reputation, and revenue which caused Mr. Devine emotional distress.

In an action for outrage, a plaintiff must sufficiently allege four elements: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the defendant's conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Williams v. Mannis*, 889 F.3d 926, 932 (8th Cir. 2018). Generally, Arkansas courts look to several factors to determine whether conduct is "extreme and outrageous." *Doe v. Wright*, 82 F.3d 265, 269 (8th Cir. 1996). Those factors include: the conduct at issue; the amount of time over which the conduct took place; the relation between the plaintiff and defendant; and the defendant's knowledge that the plaintiff is particularly susceptible to emotional distress by some mental or physical peculiarity. *Id.*

The Arkansas Supreme Court has repeatedly held that "the tort of outrage is not favored by this court and that clear cut proof is required to establish the elements in outrage cases." *Rorie*

*v. United Parcel Serv., Inc.*, 151 F.3d 757, 762 (8th Cir. 1998) (quoting *Shepherd v. Wash. Cnty.*, 962 S.W.2d 779, 792 (Ark. 1998)).  As such, Arkansas courts have taken a strict approach to determining the validity of an outrage claim, recognizing that the "tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." *Tandy Corp. v. Bone*, 678 S.W.2d 312, 315 (Ark. 1984).  The type of conduct that meets the standard for outrage is determined case by case.  *Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000).  Merely describing conduct as outrageous does not make it so.  *Id.*  Even gross negligence cannot be characterized as "atrocious or exceeding all possible bounds of decency."  *Wood v. National Computer Systems, Inc.*, 814 F.2d 544, 545 (8th Cir. 1987).

In this case, Mr. Devine fails to plausibly plead a claim for outrage.  Assuming *arguendo* that all of the allegations in Mr. Devine's complaint are true, Mr. Devine fails to allege facts to demonstrate that defendants' conduct was so "extreme and outrageous" as to be beyond all possible bounds of human decency.  While Mr. Devine does allege that defendants made false representations about Mr. Devine's business for many years, these facts do not rise to the level of outrageous behavior required by Arkansas case law.  Mr. Devine argues that defendants' conduct is regarded as atrocious and intolerable because a specific federal statute outlaws the specific conduct committed by defendants.  However, this alone is insufficient to establish that the conduct was "outrageous" or "regarded as atrocious and intolerable" in a civilized society.  *See Shepherd v. Washington Cnty.,* 962 S.W.2d 779, 791 (Ark. 1998) (holding that a sheriff who knew the dangers posed by prisoner escorts but ignored them did not rise to "extreme and outrageous" conduct, even though this ignorance led to the prisoner disarming his transporting officer, escaping from custody, and killing an innocent bystander); *Growth Props. I v. Cannon*, 669 S.W.2d 447,

448 (Ark. 1984) (upholding an award of damages based on an outrage claim arising when an owner of a cemetery moved heavy equipment across the graves of plaintiffs' relatives, causing exposure to their vaults that could have been avoided by an alternate route, determining that such conduct constituted "careless and callous" disregard); *Rorie*, 151 F.3d at 760 (holding that plaintiff could not establish an outrage claim in Arkansas based on her allegations of disparate treatment, sexual harassment, and termination due to her gender, emphasizing that the tort of outrage is not favored in Arkansas and that the alleged instances of discrimination and harassment do not support such a claim). Additionally, Mr. Devine has not pled facts alleging that these actions caused him emotional distress or that the emotional distress sustained by Mr. Devine was "so severe that no reasonable person could be expected to endure it." *Williams*, 889 F.3d at 932.

For these reasons, the Court dismisses Count III of Mr. Devine's complaint as to separate defendants Sparky for failure to state a claim upon which relief can be granted.

### 4.    Unjust Enrichment

Count IV of the complaint alleges a claim for unjust enrichment based on defendants receiving "the value of Mr. Devine's name and business goodwill as well as revenue that was improperly diverted from Mr. Devine to Mr. Wilson and Sparky" (Dkt. No 1, at 27).

Unjust enrichment is an equitable doctrine imposed when one party has been unjustly enriched at the expense of another such that restitution is warranted. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005). To state a cause of action for unjust enrichment in Arkansas, a plaintiff must plead four elements: (1) the plaintiff suffered a detriment; (2) the defendant received money from the plaintiff to which it was not entitled and which should be restored to the plaintiff; (3) there was some operative act, intent, or situation that made the

alleged enrichment of the defendant unjust and inequitable; and (4) the amount by which the defendant was unjustly enriched.  *Hall v. David H. Arrington Oil & Gas, Inc.*, Case No. 2:09-cv-0091, 2010 WL 1253383, at *2 (E.D. Ark. 2010).

In this case, Mr. Devine has plausibly alleged that defendants were unjustly enriched.  The complaint is sufficient to establish:  (1) Mr. Devine suffered a detriment due to defendants' diverting business from Mr. Devine to Mr. Wilson and Sparky; (2) defendants were unjustly enriched by receiving the value of Mr. Devine's name and business goodwill, as well as revenue; (3) the actions of defendants made this enrichment unjust and inequitable; and (4) the amount by which defendants were unjustly enriched.

For these reasons, the Court finds that Count IV of the complaint sufficiently states a claim for unjust enrichment.

### IV.    Conclusion

For the foregoing reasons, the Court:

(1) denies Mr. Wilson's motion to dismiss (Dkt. No. 5);

(2) grants Sparky's motion to dismiss as to Count III as to separate defendant Sparky (Dkt. No. 8); and

(3) denies Sparky's motion to dismiss as to Counts I, II, and IV (*Id.*).

It is so ordered this 18th day of December, 2024.

Kristine G. Baker
Chief United States District Judge